May it please the Court, Salma Y. Rizvi, Pro Bono Attorney for Petitioner. I'd like to reserve four minutes for rebuttal. Well, we'd also like to reiterate our gratefulness for participating as a pro bono attorney. Thank you. Thank you. Mr. Hussain appeared before the immigration judge without counsel, yet he nevertheless managed to provide credible testimony and piles of evidence that he thought demonstrated the only thing the IJ told him on four separate occasions that he needed to show the reasons he was afraid to return to Pakistan. Then after the piles of evidence. Yes, your honor. That's the first time I've ever heard that. Instead of overwhelming evidence, piles of evidence. I've never heard that before. I'll keep that in mind. Thank you. Then after the completion of Mr. Hussain's merits hearing, the IJ said making this showing was not enough and that there were other elements of his claim which were not satisfied, thereby denying relief. The BIA failed to remedy various critical due process errors below and made further legal errors, two of which I would like to discuss today. The first, the BIA narrowed the applicable forms of harm, which should be considered cumulatively in assessing whether he was persecuted. And second, under the unwilling and unable analysis, the BIA relied on the Pakistani government's efforts to control the Taliban as sufficient, where this court requires evidence of effectiveness to control in the petitioner's hometown. Well, let me ask you this. I mean, obviously the agency found that the harm suffered by Hussain were incidents of generalized violence and did not demonstrate that the Taliban targeted him personally. And your standard of review on this is it has to compel, the record has to compel a contrary conclusion. So even though the IJ or the BIA could have found that it was individualized, they didn't. So why does the record compel a contrary finding? Because I think you have the one where the whole town gets, his jewelry store gets burned down and everyone kind of gets burned down. And then you have another where he's in a convoy that gets attacked. And so why does the record compel a contrary conclusion that it was particular to him? Yes, Your Honor. Well, each of the incidents that Mr. Hussain, even if other people are attacked in an incident, it doesn't negate the fact that he himself was also targeted. He was one of many who was targeted in the 2007 attack and that is fine. He doesn't need to be the only one targeted. His town was, he was captive under siege. He testified that fellow committee members were killed in an attack. His friends were cut up into pieces. There's record evidence stating his specific targeting. For example, on AR 225, it says that he lost $16,000 worth of the jewelry. AR 80, the Taliban directly threatened Mr. Hussain to kill him and his family members. Several times they tried to kidnap him. The record evidence is replete showing that there is sufficient targeting. Counsel, it sounds like your argument is that, well, if they target the town that he's in, then he's being specifically targeted. But I mean, you would agree, I expect that at some level. I mean, if you're targeting a country, does that mean everybody in that country is specifically being targeted? I don't, I don't think that could be right. So, so it sounds like, it sounds like you're kind of agreeing that they were just targeting the town, but your argument is that means that he was targeted. And I don't know. That's, that's, I don't know that we have any case law that says just because the whole town is targeted, that means somebody, you know, if a bunch of shops get burned down and his happens to be one. And then similarly, like with the convoy, I suppose the convoy is smaller than a town, I assume, but we don't know how big. So. Your Honor, he testifies in his hearing and there is record evidence that he was targeted and he says we were targeted by the Taliban. What is that record evidence? I think that's what Judge Callahan was asking. Not just general evidence that we know about the two incidents. If we don't agree that those broad incidents were targeting, what is the record evidence of targeting? The record evidence is that he says, because we, in ARA 185, when he said me, he went, he meant his particular committee. He's part of a particular committee of the Pasteran. Had the IJ properly probed, the IJ would have found that the only people killed in that attack in 2007 were members of the Pasteran, his committee. They weren't regular Shias in the town. There weren't other, and this, this kind of, this goes to the heart of the issue here before this court, is that the IJ failed to properly probe. And under this court's case law, the IJ has a duty to consciously and scrupulously probe. And, and Mr. Hussain has overcome that, the presumption that the IJ considered all the evidence before it. For example, let me ask you about that because that's it. We have this case law that says the IJ needs to probe. When I read your brief, it reads a little bit like the IJ basically needed to lead him by the hand and say, you know, this is what I need. Can you give me what I need? But you know, you also, these are adversarial proceedings, right? They are, and, and there is, I think, a risk that if the IJ, I mean, I'm trying to put myself in the shoes of the IJ. If the IJ just basically says, this is what I need to hear from you to give you the relief that you want, then people are inevitably going to say that, I think. And so there's some tension there. So where is the line between the IJ probing, which it seemed like the IJ asked a lot of questions here, versus the IJ going beyond that and essentially acting as an advocate for the person, which would be very odd in an adversarial proceeding. Yes, your honor. There is evidence. If you, if I may point your honor to AR-185, where Mr. Hussein says that he's fired at. The IJ never asked about this. He never asked about the specific firing incident directed at Mr. Hussein, and that was referring to AR-225. He was fired at in a convoy attack. The Taliban directly were shooting at Mr. Hussein, yet that was not probed. In AR-162, before the merits hearing, Mr. Hussein says he's victim of- But counsel, just like two lines before that, he says, have you ever had any problems with the Taliban? It's not just me, only all the people in, I'm not going to be able to say the name correctly, but, and then he says he was fired at, but it seems when you take that in context, he's saying we were all getting fired at. Well, your honor, if you look at the testimony on itself, but there is evidence to support that there was a specific firing at him. If we look at AR-80 and we look at AR-225, the IJ failed to properly probe. I mean, Mr. Hussein also says that he shows photos of his friends at the end of the hearing who are mutilated. The IJ fails to even ask, are you afraid this will happen to you? You know, after the Taliban, when he said, boys are following me, the IJ dismissed that completely. He didn't even ask, is this, were they trying to kidnap you? Why was this concerning to you? There's multiple areas in the hearing where the IJ could have probed. And it seems that, you know, that we have overcome the presumption that the agency even considered the entire record because the agency fails to mention highly probative evidence, highly probative evidence- At the end of the hearing, the IJ also said, is there anything else that you want to tell me? A very open-ended type of question. And, you know, what Judge Van Dyke is saying, you know, I could tell you, well, the elements of asylum are 1, 2, 3, 4, wink, wink. You got anything to tell me? I mean, that, you know, if I were the government sitting there, I'd be all over that. You know, well, do you want to tell me that maybe X, Y, and Z? I mean, you can't, you know, the IJ is not the lawyer or the advocate for you. I completely agree with you, Judge Callahan. This is exactly the point. The IJ never explained to Mr. Hussain what were the elements of asylum. During a multi-month hearing, four times, he only said, you only have to show me why you're afraid. He never once specifies what the elements are, which in and of itself is the most, you know, glaring due process error. Had Mr. Hussain knew the elements, if there's anything else you'd like to add, he would have taken an opportunity to add more there. Let me remember, counsel, wasn't Mr. Hussain, was he, he was told he could get counsel. I'm trying to make sure I remember the right case here, but he was told he could get counsel, but then he was also told he could be referred to some folks that help prepare these things. Is that this case or is that a different case? The government does argue that he had a legal orientation provider that could have helped him, but this duty is non-delegable. The case law in the circuit is clear. The IJ, at the minimum, has to explain to my client what he needs to prove to show asylum. Mr. Hussain had no idea that he had a nexus requirement. He had no idea that there was past persecution was even relevant to his claim because he was only asked of fear of future persecution. And these perfunctory cleanup questions this court has held over and over are not sufficient. And furthermore, if we go to those questions in AR 178 into 180. I think we have your argument in mind on this. Why don't you tell us, why does the record compel that he could not reasonably relocate? Because in reading the record, he seems to say, well, I could relocate, but I don't want to be that far away from my family. But then ironically, he'd like to be really far away in the United States from his family, but not in another part of Pakistan. So that sort of, you can't help but notice the irony of that. Well, your honor, there's another glaring issue here when it comes to relocation. The IJ and the BIA fail to go to the required factors under federal regulations. They have to engage in those factors. They have to question, is there serious harm, family ties, administrative infrastructures? And there's there's replete evidence in the record and on his testimony that it would be unsafe and unreasonable for him to relocate. The IJ, the BIA itself acknowledges, they admit that their attacks continue in every province in Pakistan. They admit that there's no place where the Taliban is not that could target Mr. Hussein. And this court already found. So that's I saw your argument on that. And my first thought was, I mean, you could kind of say that about Europe, right? You could say terrorist attacks happen on occasion in Europe. You could. I mean, recently, you could almost say that about America, that there's violence in certain areas and all around our country right now. So so that's my like, it seems to me like your argument is basically, well, Pakistan, you can't be 100 percent safe anywhere and therefore that shows you can't relocate. Is that can that really be right? Because like I said, I think that would you can't guarantee a safety in Portland. Your Honor, the it just because there's civil strife and general violence. That's not the analysis. The analysis is that the Taliban is targeting Mr. Hussein. And the Taliban, this court has already found, can find and kill and carry out targeted killings throughout Pakistan. So they target so they targeted him. But I mean, he said he would he was in a town that you you're characterizing as targeted. I'm not sure that that's targeted, but how long was he in that town again after the his store got burned when they attacked the whole town before another incident happened before the convoy? How long happened? There was five years under which he was he was under siege. He couldn't leave the town even if he wanted to and I'd like to reserve my time. If that's okay for rebuttal. If if did that answer your question? I can judge that night. You don't get the hard question. That's the only thing. I'm sorry. I'm sorry. Yeah, I mean, I'm so excited to answer this question. So that's fine. That's fine. Thank you. Thank you. Thank you counsel. Okay, we're ready to hear from the government. Okay. Can you hear me? Hello, but we can hear me. We can hear you. Okay. Thank you. Kristen Jafrita representing the government first. I'd like to apologize for the phone line. My equipment my video equipment did not arrive. So that's embarrassing but be that as it may I will carry on. I would respectfully submit that the petition for review should be denied because substantial evidence supports the agency's findings in this case first that substantial evidence supports the determination that Mr. Hussein failed to meet his burden of proof to show past persecution because as as your honors were pointing out, it's not the case that everywhere in the world where people are victims of sectarian strife or violence that that general population is conferred with eligibility for asylum. You have to show individualized what about okay, but what about maybe a stronger argument the record contains significant evidence, particularly from the country reports that the Pakistani government is unable to control the Taliban and maybe like they just try to act like they're going to but they're really not why shouldn't we find the BIA aired and concluding? Otherwise, I mean, they're well, there is there they have been engaged in a campaign. It's true that they're they've been engaged in a campaign fighting against the Taliban, but on page but they're kind of quick to this and what they decide to do at certain times. I mean, I think that that they're you know, they see a times of things and there have been terror attacks in Pakistan, but on page 245 of the administrative record the country report states that a terror related fatalities in Pakistan have been declining from 11,700 in 2009 to 1,700 in 2016. So that suggests to support the finding that they're they're effective in combating the Taliban. Well, the fatalities have been reduced tenfold in that time. So that would suggest a certain amount of effectiveness on the part of the Pakistani government in combating the Taliban. The BIA and IJ didn't rely on that fact to suggest that correct? They relied on they did they they relied on they said there was evidence in the record to suggest that the Pakistani government had made great strides in their campaign campaign in combating the Taliban. So they didn't the loss that the decrease in fatalities not specifically, but they did mention the country reports and the the Pakistani government's efforts to combat the Taliban, right? So but the decrease in fatalities is basically the only evidence to support the that they're effective in combating the Taliban. Do you agree with that? Oh, no, there's other evidence. There's the country report sites improvements in professionalism and police in terms of protecting minorities and it's the country reports also cite the 2014 military operation in the tear in the Northwestern Territories where they seized weapons and arrested Taliban commanders. That's on page 263 of the country reports. Okay, so there's judgment. Are you done? Yes, so this is kind of follow-up something that when I read when I read this it is tell me if I'm reading this correctly. It seems like in this area where Mr. Usain lived. It's sort of a remote area where they don't seem to rely as much on the national government for their local government policing Etc. It's more. It's almost like a tribal where the town folks protect themselves. In fact, that seems like the story that's told about the town attack. The town was attacked in the town folks. There's not a lot in the record about that, but it appears like the town drove them away to what extent do we take that into consideration as to the whether or not the count the town itself providing sort of protection. It's almost like the country reports discuss this too. If you read them, it's almost like a martial law kind of situation there. But if the fact though is that although Mr. Hussein did say that he believed that the national government did didn't protect that area the you know, objective evidence in the country reports show that they have, you know, they launched a mass operation against the Taliban, which was has been successful in terms of arrests and get you know, seizing caches of weapons and reducing fatalities and in fact, you know, the fact of the matter is that although Mr. Hussein along with the rest of the population has over the years, you know, there have there have been terrorist attacks in which, you know, he and the rest of the population have been victimized by this. He and his whole family had, you know, he remained there after the 2007 market attack for another number of years and he wasn't physically harmed. He remained there. His family remained there. And after the convoy attack, he still remained there for another several years. His entire family is still there, apparently unharmed. There isn't any evidence in the record that he was specifically targeted by the Taliban rather than just being a victim with the rest of the population. Counsel, the only evidence I think and I think your opposing counsel did most that I think you could rely on to say that he was specifically targeted is administrative record 80. That letter, I know that's disputed, but just assume I don't want to talk about whether that letter should be here. Now, let's just assume we can review the letter. It says due to which Taliban terrorists threatened him and his family members to kill or kidnap. Taliban tried several times to kidnap Mr. Hussein, but he escaped. His life is unsafe. So that seems to be some evidence that of direct threats. I would say that, you know, even assuming that record was, you know, it wasn't properly before the IJ, but even assuming that, you know, they didn't ask to have it remanded. But even assuming you look at that letter, what quality of evidence is that really? There's like no detail whatsoever about what his position was in the past are on. It doesn't say, you know, when he joined, what his position was, what his duties were. And as far as the threats are concerned, it gives no information about what these threats were, when they were, how he was threatened. What? Oh, there's no information about it at all. It's just completely bare bones. There's, you know, so in terms of like what your argument sounds like is that if this is evidence, it's not very persuasive or no, it's not. It's not really worth a whole lot. And I think I hear you. I'm telling you what we can. So I have another question that it actually relates not just to this case, but a lot of these immigration cases we get. We have this situation where the government will point to the country port, which says, you know, from at least my perspective, sitting here and where I live in America is that this is a pretty bad place, right? Not somebody somewhere I would necessarily want to live because and so but it will say it'll also say as you as you noted, it'll say things are getting better. They're really making the government's really attempting to address like these problems. That's true in this case. Another case. I think you both types of evidence are in the country port. I never know what to do with that because what am I supposed to is the fact that things are getting better? Like is that sufficient? What if they were really bad? And now they're just bad, right? Or or do we look at it also can't tell from the country port where we're at right now. It's always like they're bad, but they're getting better. I don't know what to do with that. Well, the court in in in cases like Halim and will carry and low long dealt with situations where you had sort of that was like Chinese Christians in Indonesia and Indonesia where there was a situation where there was a group and they said you can't rely just on that. The group is, you know subject to you know, like bad conditions. You have to have sort of individualized evidence that you're going to be specifically targeted and sought out and that and it's never been the case that you can just rely on civil strife or that there's a you know, that things are bad in a particular place or country. Um, and that there isn't a sort of a group category for for persecution or that there's eligibility for asylum on a group basis because because of war or something like that. It's that's like overseas refugee processing. So you have to have that individualized evidence and when the country report says that things are getting improving. It's the board's job to kind of make that calculation and give weight to that evidence about whether things are improving or not improving and the court reviews that for substantial evidence and you you would look at whether the evidence compels the conclusion that the board is wrong. And that's my you know, respectfully. I would say in this case the evidence does not compel the conclusion that the board was wrong and deeming that the evidence here shows that in Pakistan that the government of Pakistan is improving its ability to control the Taliban. So counsel, I hear you on that and it makes a certain amount of sense, especially what you say about the fact that you can't just look, you know, if it's bad conditions, generally they can't rely on it. It has to be something that's targeted at you. But then it makes me wonder why do we, why are the country, I mean the country reports are very relevant. In fact, I think we have a case law that says that we have to look at the country reports. So why are they even relevant? Because the country reports only talk about generalized conditions. Is it just something as a backdrop that we're looking at this against or I, it's hard for me to figure out whether, why the bad conditions are in the country report are relevant and why the fact that they're improving is in the individual case, right? Well, it, it, it does. It gives context to his testimony as to, it gives meaning to what he's saying about his circumstances. I suppose you would say, who are the Taliban? What is the government of Pakistan doing? So would your argument be then, to put that into this case, your argument would be, well, you know, the country report talks about Taliban operates in fact, in there and, and that he, and so, but they're operating generally and he talks about two incidents where he was affected by it, but, but that's consistent with the country report that they're operating generally there. So you kind of take it all together. I guess I could see. And it gives some, it gives some objective reporting on what is actually happening in the ground. But your position is we can't rely on and say things are just really, really bad in Pakistan, because I guess that would mean everybody would be eligible. Right. Then the entire country of Pakistan, it would just be a matter of who manages to make it to the United States. And that's never been, that's never been the, the way that the asylum law functions that, you know, anyone who comes here from a war-torn or strife ridden country is eligible for asylum. Just based on the fact that their, their country is in bad shape based on civil strife, they have to have, you know, the definition of asylum has it in it, what is laid out that you have to show that you have to, you know, you have to show an individualized, well-founded fear of persecution based on certain things. And our argument on the relocation question, I just have a few minutes left on the relocation question. How, if I recall correctly, and I hope I remember that this is the right case, but they are arguing that the government has the burden. You're arguing that he has the burden. And I think you're, that turns on whether or not he suffered, whether or not what happened to him is actually past persecution. Is that right? Exactly. Yes. If he, if, if we, you know, we're arguing that he failed to show that he suffered past persecution. Right. Right. So let me ask you real quick, because we're running out of time a little bit, but if, if we were to agree that he had suffered past persecution, would you agree that government didn't really try to meet its burden on the relocation? So the relocation factor. Well, if he, right. If he, if we were wrong on the past persecution, then it would have to go back anyway, of course. And then we would also be wrong on the burden for past persecution. I mean, for relocation, pardon me. Yes. And with your, with your last time, I don't know if you've really addressed his argument that, that the IJ here, the due process argument that the IJ, do you have any thoughts on that? Oh, of course. Yes. I, I think he's completely wrong. Obviously that, that it's completely overstating the court, the case law and what's required of the immigration judge in terms of laying out his whole asylum claim for him. I think the IJ behaved completely appropriately because due process is not this free floating thing. It's grounded in the statute and the regulations. And, you know, they set out what's required of the immigration judge, informing the applicant of their eligibility. If they have an apparent eligibility to apply, affording the applicant of the opportunity to make the application in accordance with their burden of proof, and he was advised that he can apply and made the appropriate applications available. He was advised of his privilege of representation. He, and the IJ was like very careful. He was given. What about the argument that he wasn't provided the standard for asylum? That seems to be their strongest claim. Well, that's not, that's not the standard of asylum is set forth in the instructions for the application. He was given the legal orientation in the detention center. He, that he was given assistance from the legal orientation provider to fill it out. And, and in Jacinto, it said that, you know, this court has said that, that there's no blanket right to be advised of the possibility of asylum or other relief. And that was Valencia. And that the due process analysis, it versus the, you know, analysis of the IJ's explanation is guided by the, by the IJ's responsiveness to the particular alien circumstances. And in Jacinto, the due process violations had to do with the alien or the IJ failing to explain that the alien could present her own testimony, like her affirmative testimony and failing to provide her an opportunity to respond to the government's cross-examination. And one of the other cases, like Agamon had to do with the IJ providing an incorrect advice on the law. And like, none of that happened here. The immigration judge is not the advocate. The court case law doesn't go so far as to say that the immigration judge has to lay out a roadmap for how you meet your burden of proof. Judge Callahan, has your question been answered? Thank you. Yeah. Okay. Thank you, counsel. Sorry. All right. Thank you very much. No, thank you. Okay. Let me, we'll go back to rebuttal. Give me two seconds. I have to change the lighting in my room. All right, counsel, this is your opportunity. If you had something you wanted to say that you didn't want Judge Callahan to hear. Okay. It's like, this is, it's sort of like if the lights are like being on stage here or something, and they make us look like we're, like really hot and stressed. So I had to get a little, little better lighting here. Okay. Thank you. You have two and a half minutes for rebuttal. Your honor, the government is wrong for three reasons. First, under the unwilling, unable to standard, the correct analysis is whether or not the government can control the Taliban in Karachi, not countrywide. There is no substantial evidence to support the conclusion that the government can control the Taliban in Karachi. Nar the record sites that the government provides ar-245 says nothing about the Taliban. It says about terrorists in general. What about the council? What about the local government? This is kind of the question you may have heard me ask your political. I mean, there is some evidence in the record in a sense that if I recall correctly, the local townspeople drove away the Taliban and they obviously didn't cause any problems for five more years there or they didn't burn his place down. What about in that particular the way their government seems to be where it's a local government? Does that count or does that not count? Your honor, that is not in the record. It was actually frontier corps who Mr. Hussein is talking about and that is the national military and that is a really compelling piece of evidence actually that in the convoy attack. He is being attacked while he's being escorted by the frontier corps itself, meaning the Taliban attacks, whatever military support is there in an in an attempt to control and there's no that this further proves ineffectiveness of control and so and when you're asking Judge Van Dyke about what do you do when you have country reports that cut eat what each way you look at the evidence that the petitioner provides the evidence the petitioner provide numerous articles saying that terrorism attacks in production are continue to happen. None of those right at those articles were mentioned and then from 2015 of the 2016 country reports. You'll see that there's no change police often continued to fail terrorist the Taliban continue to attack religious minorities as Shia. There was no change also on 8188. This is what I was referring to. You know when he was asked a judge. So what happened? This is AR 188. Why wasn't your hometown attacked again? And he said well they went away and then other people they attacked back and so I think so that sounds like there's some response and does it the fact that that's not the federal government, but it's like the local government is that is that I think that that would count that it's the local government just like you say the local police force counts the local government was unable to control and after the attack he submits records that attacks actually continued with which the IJ never probed and specifically it he is the one who is at risk of the control analysis whether they can prevent Mr. Hussain from being attacked and because he's a member of this production our Peace Committee on AR 80 on AR 193. He talks about it. There's a lack of probing and opposing councils, right there there isn't much to discuss the meat of his his particular social group, but that's because the the IJ never never asked and to the last issue of relocation which which which touches on your point Judge Van Dyke in which opposing Council argued family analysis the fact that his family is there is irrelevant if they're not similarly situated and there's no record evidence that any of the family members there are part of this particular committee which he is a part of except for one brother who has already fled the country and went to Saudi Arabia. All right. Has the panel had its questions answered? Yes. All right. Thank you. We've like we've taken both of you a little bit over time, but thank you both for your helpful argument in this matter and this will stand submitted. Thank you. Thank you. Thank you for pro bono government work all of you. Thank you. Yeah.
judges: Callahan, Bumatay, Vandyke